744 A.2d 670 (2000)
328 N.J. Super. 24
Jennifer P. GERBER, an infant by her Guardian Ad Litem, Francine GERBER, and Richard and Francine Gerber, Individually, Plaintiffs-Appellants,
v.
SPRINGFIELD BOARD OF EDUCATION, Ruth D. Brinen, Kenneth Faigenbaum, Richard Falkin, Stephen M. Fischbein, Robert B. Fish, Keith B. Kurzner, Jacqueline P. Shanes, Benito Stravato, Gary Tiss, Township of Springfield, The Florence M. Gaudineer School, David Chadwick, Kenneth Bernabe, Beth Gilardi, Lori Luke, and Dennis McCarthy, Defendants-Respondents, and
Sonocerra Hunter and John Does, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 2000.
Decided February 3, 2000.
*672 Nicholas R. Buttafuoco, for plaintiffs-appellants (Buttafuoco, Karpf & Arce, attorneys, Kearney; Mr. Buttafuoco, on the brief).
Ian C. Doris, Roseland, for defendants-respondents (Harwood Lloyd, attorneys, Hackensack; Mr. Doris, of counsel; Eileen P. Kuzma, on the brief, Brooklyn, NY).
Leary, Bride, Tinker & Moran, Cedar Knolls, for defendant-respondent David Chadwick; James D. Bride, on the brief.
Before Judges PETRELLA, BRAITHWAITE and COBURN. *671
*673 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
In this appeal we must determine whether the injuries suffered by plaintiff[1] Jennifer P. Gerber, a junior high school student, as a result of being attacked by her classmate, defendant Soncerra Hunter ("Hunter"), are sufficient to meet the threshold requirements for pain and suffering under the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, and whether the individual members of the Springfield Board of Education are immune from suit in the present litigation. The motion judge concluded that plaintiff's injuries did not meet the requirements of N.J.S.A. 59:9-2(d) and granted summary judgment to defendants: Springfield Board of Education ("Board"); Florence M. Guardineer School ("School"); and School employees Kenneth Bernabe, Beth Giladi, Lori Luke, Dennis McCarthy, and David Chadwick ("Chadwick"). The motion judge also granted summary judgment to the individual Board members: defendants Ruth Brinen, Keith Faigenbaum, Richard Falkin, Steven Fischbern, Robert Fish, Keith Kurzner, Jacqueline Shanes, Benito Stravato and Gary Tish, based on the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11. We conclude that the motion judge erred in dismissing plaintiffs' claim for pain and suffering and therefore reverse. We affirm, however, the grant of summary judgment to the individual board members.
Because this matter arises on defendants' motions for summary judgment, "we assume the truth of plaintiff[s'] version of the facts, giving plaintiff[s] the benefit of all favorable inferences that version supports." Brooks v. Odom, 150 N.J. 395, 398, 696 A.2d 619 (1997) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995)). Plaintiff attended the School in Springfield for approximately two years, from 1992 to September 16, 1994. During that time, plaintiff was subjected to various degrading and tormenting acts by her classmates. School officials were aware of these ongoing problems. Gary Friedland, the school superintendent, wrote to Francine and Richard Gerber, plaintiff's parents, in May 1994, in response to their grievances. His letter concerned plaintiff's general welfare and her safety in the School.
The situation worsened for plaintiff in the beginning of the 1994 school year. In her English class, she was verbally harassed and hit in the eye with a paper clip, which resulted in a corneal abrasion. Then, on September 16, 1994, plaintiff was attacked in the classroom by Hunter. After some horseplay in the hallway, plaintiff and Hunter entered English class. Hunter then went to plaintiff's desk, pulled her out of her chair and threw her against the wall. Hunter picked up plaintiff by her hair, repeatedly smashed her face into the chalkboard and punched her in the face and stomach. Chadwick, the English teacher, was apparently present in the classroom throughout the attack and made no attempt to assist plaintiff. Ultimately, the teacher from across the hall took plaintiff to the nurse's office, where, despite the fact that plaintiff was wounded and bleeding, the school nurse waited approximately half an hour to call plaintiff's mother.
Thereafter, plaintiff was taken to the emergency room at St. Barnabas Medical Center in Livingston, where she was diagnosed with possible nasal fractures. Plaintiff was treated by John Bonanno, M.D., beginning September 20, 1994. Dr. Bonanno diagnosed plaintiff with:
a distorted nasal pyramid with the nasal dorsum deviated to the right. A fractured and depressed left nasal bone and out-fracture of the right nasal bone were present as was crepitus overlying the areas of the nasal bone fractures. Rhinoscopy revealed the nasal septum to be fractured in multiple places. A large mucosal tear was present in the cephalic portion of the right side of the septum which appeared to be healing satisfactorily. The turbinates were congested bilaterally, *674 further adding to the nasal airway impairment. Evidence of recent bilateral epistaxis was also noted. Marked ecchymosis was present in the left lower eyelid and left cheek areas. Multiple contusions, abrasions, and areas ecchymosis were also noted in the occipital scalp, right shoulder and right trapezius area.
On September 20, 1994, plaintiff underwent surgery for a "closed reduction of nasal bone and septal fractures." Since the surgery, plaintiff has had difficulty breathing through the nose. She has also suffered with intermittent headaches, for which she takes prescribed medication. On October 25, 1994, plaintiff saw Dr. Bonanno and complained of difficulty breathing through the nose. Dr. Bonanno observed a shifting of the nasal septum to the right. On December 27, 1994, Dr. Bonanno observed a further shifting to the right, and told plaintiff that further surgery may be necessary. Dr. Bonanno again discussed the possibility of corrective surgery with plaintiff on March 28, 1996, but cautioned that "[d]ue to the nature of the nasal injury, however, scarring would always be present and although the airway could be improved, there was no possibility of obtaining a completely normal airway." Dr. Bonanno recommended reconstructive surgery, but stated:
Her injuries are permanent. In time her symptomatology will most likely become worse. She may develop increased airway impairment, nasal dryness and epitaxis. The patient's headaches may also increase in both frequency and intensity, the end point of which may be chronic rhinitis and sinusitis. If this occurs it will require more intense medical treatment and possibly sinus surgery. Also, if the intra-nasal scarring and dryness eventually cause a septal perforation, a collapse of the nasal dorsum may follow which may cause a significant cosmetic deformity in this female patient, further reducing her quality of life.
Plaintiff was evaluated by several other doctors. Walter Molofsky, M.D., an associate professor of neuroscience and pediatrics at UMDNJ[2], observed that plaintiff had "a slight indentation on the occiput measuring about 2X2 cm long which was tender to palpation." He also noted that she has a "combination of post concussive dysthetic feeling as well as some migraine headaches." David J. Gallina, M.D., a neuropsychiatrist, diagnosed plaintiff with post-traumatic stress disorder, manifested by sleep difficulties, recurrent dreams of assault, depression, anxiety, and loss of interest in normal activities, stemming from the attack and the events surrounding the attack. Nazar H. Haidiri, M.D., a neuropsychiatrist, diagnosed plaintiff with post-concussion syndrome, post-traumatic headaches and neurosis and facial trauma. Jeffrey Greenberg, PhD., a psychologist, recommended that plaintiff not return to the School.
After the attack, plaintiff followed that recommendation and moved to her aunt and uncle's home to attend a different school. She continues to exhibit apprehensions in social situations with her peers and "suffers from a loss of confidence in adult authority figures."
On October 27, 1995, plaintiff and her parents commenced this litigation. Their complaint alleged negligence against the Board, its individual members and certain Board employees. The suit also named the Township of Springfield as a defendant. The complaint alleged that Hunter assaulted plaintiff. The complaint sought both compensatory and punitive damages.
Thereafter, plaintiffs filed an amended complaint on April 23, 1996. The Board, the Board members and the School employees, with the exception of Chadwick, collectively filed an answer on March 11, 1996. The answer included a cross-claim for contribution and for common-law indemnification *675 from all co-defendants. Chadwick filed an answer to the complaint on January 27, 1997. His answer also demanded contribution and indemnification from his co-defendants. On February 27, 1997, the Township of Springfield filed an answer to the complaint and cross-claim, demanding contribution, indemnity and apportionment. Hunter did not answer or otherwise respond to the complaint, and on August 9, 1996, a default judgment was entered against her.
On July 27, 1997, the Township of Springfield was granted summary judgment. Its motion was unopposed. Thereafter, on September 12, 1997, summary judgment was granted to the individual Board members pursuant to the Charitable Immunity Act. See N.J.S.A. 2A:53A-7.1.
Subsequently, the Board, the School and the School employees moved for summary judgment with respect to all non-economic damages. The motion was opposed, and following oral argument, partial summary judgment was granted to these defendants. On February 20, 1998, summary judgment was granted to the School, its employees and the Board, dismissing all of plaintiffs' claims for punitive damages.[3]
On March 20, 1998, the motion judge denied plaintiffs' motion for reconsideration. On May 28, 1998, the judge entered an order staying plaintiffs' claims against Hunter and for unpaid medical bills pending appeal. On July 2, 1998, the case was dismissed without prejudice. This appeal followed.
Plaintiffs' negligence claims arise against government entities and are thus governed by the Tort claims Act, N.J.S.A. 59:1-1 to 12-3 (the "Act"). The Act provides specific exemptions to the doctrine of sovereign immunity. See e.g., Sims v. City of Newark, 244 N.J.Super. 32, 40, 581 A.2d 524 (Law Div.1990); Fox v. Parsippany-Troy-Hills Twp., 199 N.J.Super. 82, 87, 488 A.2d 557 (App.Div.), certif. denied, 101 N.J. 287, 501 A.2d 949 (1985). Except where liability is specifically imposed by the Act, public entities remain immune from negligence suits. N.J.S.A. 59:1-2. As a statute that abrogates sovereign immunity, the Act is strictly construed to permit lawsuits only where specifically delineated. Polyard v. Terry, 160 N.J.Super. 497, 506, 390 A.2d 653 (App.Div.1978), aff'd, 79 N.J. 547, 401 A.2d 532 (1979); see also Longo v. Santoro, 195 N.J.Super. 507, 514, 480 A.2d 934 (App.Div.), certif. denied, 99 N.J. 210, 491 A.2d 706 (1984) (specifying that negligence claims against public entities are governed by the Act). "[I]mmunity... is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 545, 732 A.2d 1035 (1999) (Handler J., dissenting).
To obtain damages for pain and suffering, plaintiff must satisfy the requirements of N.J.S.A. 59:9-2(d). This section of the Act imposes a threshold for non-economic damages that a plaintiff must surmount in order to sustain a claim, and provides in relevant part:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.

[Ibid.]
Thus, a plaintiff may only recover for pain and suffering if medical expenses exceed $1,000 and plaintiff suffers a permanent loss of bodily function, permanent disfigurement or dismemberment. Ibid. Here, plaintiffs appeal the motion judge's grant of partial summary judgment to defendants based on plaintiff's inability to meet *676 the damages threshold for pain and suffering imposed by the Act. Plaintiff contends that she meets the threshold for both permanent loss of bodily function and permanent disfigurement. Plaintiff's potential claims for a permanent loss of bodily function are: the continued shifting of the nasal septum; permanent difficulty breathing; headaches; facial pain; and post traumatic stress disorder. Plaintiff also contends that the indentation in her head constitutes a permanent disfigurement.
To meet the threshold, a permanent loss need not be total, but it must be substantial. Brooks, supra, 150 N.J. at 406, 696 A.2d 619. The Act requires a "plaintiff to demonstrate objective, medical evidence of permanent injury to recover damages against a public entity." Denis v. City of Newark, 307 N.J.Super. 304, 317, 704 A.2d 1003 (App.Div.1998); accord Thorpe v. Cohen, 258 N.J.Super. 523, 529, 610 A.2d 878 (App.Div.1992). Plaintiff must present objective evidence of permanent injury because damages for temporary injuries are not recoverable. Brooks, supra, 150 N.J. at 403, 696 A.2d 619.
Where plaintiff's medical proofs support a claim of permanent injury that is based on objective evidence and not merely on subjective complaints, such evidence raises an issue for the jury, and removes the case from the realm of summary judgment. See Mack v. Passaic Valley Water Comm'n, 294 N.J.Super. 592, 600, 684 A.2d 77 (App.Div.1996). Here, our careful review of the record convinces us that plaintiff has presented objective medical evidence of a permanent loss of bodily function. Despite surgery, plaintiff has difficulty breathing through her nose. This is caused by a shifting of the nasal septum. Dr. Bonanno reported that although plaintiff's nasal injury may be improved by further surgery, "there was no possibility of obtaining a completely normal airway." He also stated: "Her injuries are permanent. In time her symptomatology will most likely become worse." We conclude that a substantial loss of bodily function encompasses permanent and constant difficulty breathing and that therefore, the motion judge erred in not permitting plaintiff to present her case to the jury.
Plaintiff also claims that her post-traumatic stress disorder constitutes a compensable injury under the Act. In Collins v. Union County Jail, our Supreme Court held that psychological trauma could constitute a permanent loss of a bodily function. 150 N.J. 407, 409, 696 A.2d 625 (1997). Collins, an inmate in the Union County Jail, was sodomized by a jail guard, thereafter suffering from post-traumatic stress disorder, but no permanent "physical" injuries. Id. at 409-11, 696 A.2d 625. Collins suffered from "nightmares, flashbacks, difficulty in sleeping, sudden outbursts of crying, screaming in his sleep, a severe loss of self esteem, and an inability to trust others." Id. at 415, 696 A.2d 625. The Collins Court paid special attention to the legislative history of the Act, and concluded that "the Legislature could not have intended that the verbal threshold provision of the Act would bar all psychological claims caused by a rape simply because there was no residual physical injury." Id. at 422, 696 A.2d 625. Thus, psychological and emotional injuries are assessed in the same manner as physical injuries when such injuries stem from a violent physical assault. Id. at 423, 696 A.2d 625.
The Court distinguished Collins from an earlier case, Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287 (1987), in which relatively brief emotional distress was held not to equate to compensable damages. See Collins, supra, 150 N.J. at 413-15, 696 A.2d 625. Conversely, in Collins, "there [was] a very high probability that the [mental] injury [was] permanent." Id. at 415, 696 A.2d 625. This court has since interpreted the language in Collins to require that a plaintiff must present "sufficiently aggravated" circumstances to prevail under a psychological claim. Hammer *677 v. Township of Livingston, 318 N.J.Super. 298, 307, 723 A.2d 988 (1999). A "mild level" of anxiety or depression is not a sufficient impairment to constitute a "substantial" loss of a bodily function. Ibid.
As a result of the attack, plaintiff has been diagnosed with post-traumatic stress disorder, manifested by sleep difficulties, recurrent dreams of assault and a loss of interest in normal activities. Plaintiff's proofs, however, do not demonstrate that this condition is a permanent loss of bodily function; this is the fatal flaw in plaintiff's argument. Plaintiff's medical experts must provide proof of the permanency of her condition to sustain her burden of proving a permanent loss. See Denis, supra, 307 N.J.Super. at 318, 704 A.2d 1003 (finding that where plaintiff was unable to establish the permanency of her condition, damages were unrecoverable). Thus, the motion judge properly found that plaintiff's post-traumatic stress disorder claim, standing alone, would not meet the threshold.
As to plaintiff's contention that the indentation on the back of her head constitutes permanent disfigurement under the Act, we conclude that the motion judge properly rejected this claim also. Because the threshold in tort claim cases is similar to that under the "no-fault" statute, N.J.S.A. 39:6A-8(a), we have utilized similar standards in construing "permanent disfigurement." See Hammer, supra, 318 N.J.Super. at 308, 723 A.2d 988; see generally Puso v. Kenyon, 272 N.J.Super. 280, 291-92, 639 A.2d 1120 (App.Div.1994) (construing "permanent disfigurement" under N.J.S.A. 39:6A-8); Falcone v. Branker, 135 N.J.Super. 137, 146, 342 A.2d 875 (Law Div.1975). Falcone held that a permanent disfigurement must be significant, must be "more than a trifling mark discoverable on close inspection" and must "detract [] from the appearance of the person." 135 N.J.Super. at 147, 342 A.2d 875.
In Puso, we elaborated on the Falcone decision, noting that to meet the no-fault threshold, a scar must be "objectively significantly disfiguring." Puso, supra, 272 N.J.Super. at 292, 639 A.2d 1120. Similar to the requirements for a loss of bodily function, a disfigurement must also be "substantial" to meet the Act's threshold. Hammer, supra, 318 N.J.Super. at 309, 723 A.2d 988. Thus, we apply an objective standard to determine whether plaintiff's skull indentation constitutes a substantial "permanent significant disfigurement." Id. at 308, 723 A.2d 988.
In Hammer, the trial court did not enunciate any reasons why it failed to perceive plaintiff's visible scars as insubstantial, unsightly or misshapen, and we reversed and remanded the matter for trial. 318 N.J.Super. at 310, 723 A.2d 988. Conversely, in this case, the most telling evidence regarding plaintiff's disfigurement is the judge's comments on December 23, 1997. He stated:
The [c]ourt does not find that this indentation is a permanent disfigurement. One could not observe anything out of the ordinary in looking at her and her head of hair. There's absolutely no visible disfigurement or indication of disfigurement.... That is, while there is an indentation that one feels that putting one's hand on the top of her skull and pushing down, it's in no way visible and is not noticeable. And I don't find as a matter of law that hidden indentation would qualify, although it is undoubtedly permanent [,] as a disfigurement or impairment.
A superficial indentation to plaintiff's head does not meet the standard imposed by our case law. Her injury is not visible to the naked eye, it does not detract from her appearance in any way and it is not significantly disfiguring. See Hammer, supra, 318 N.J.Super. at 308-10, 723 A.2d 988. Plaintiff's claim as to a permanent significant disfigurement does not, standing alone, meet the threshold, and the claim was properly rejected.
*678 As noted, supra, in a summary judgment, the court must assume the truth of the facts presented by the non-moving party, including giving that party the benefit of all favorable inferences that those facts support. Brooks v. Odom, 150 N.J. 395, 398, 696 A.2d 619 (1997); Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520, 523, 666 A.2d 146 (1995); Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995). "To withstand a motion for summary judgment, the non-moving party need only present `competent evidential materials ... [which], when viewed in the light most favorable to [that] party, are sufficient to permit a rational factfinder to resolve the alleged dispute in [that party's] favor....'" Hammer, supra, 318 N.J.Super. at 310, 723 A.2d 988 (citing Brill, supra, 142 N.J. at 540, 666 A.2d 146) (alterations in original).
Here, viewing the evidence in the light most favorable to plaintiff, the injury to her nose is sufficient to withstand defendants' summary judgment motion with respect to plaintiffs' claim for non-economic losses. Plaintiff's post-traumatic stress disorder and permanent disfigurement claims do not alone satisfy the threshold requirements of N.J.S.A. 59:9-2(d). Nevertheless, because we have concluded that plaintiff's injury to her nose constitutes a prima facie case of a substantial permanent loss of a bodily function, "the limitation on the recovery of pain and suffering damages under N.J.S.A. 59:9-2(d) does not apply and plaintiff may present evidence related to all of her alleged permanent injuries to the jury." Hammer, supra, 318 N.J.Super. at 310-11, 723 A.2d 988. Plaintiff is therefore entitled to present evidence of the nature and extent of all of her injuries to the jury. Ibid.; Cf. Puso v. Kenyon, 272 N.J.Super. 280, 293, 639 A.2d 1120 (App.Div.1994) (stating that a single injury permits suit for all causally related injuries). We therefore reverse the partial summary judgment granted to the Board, the School and the School employees.
Finally, we address plaintiffs' claim that the motion judge erred in granting summary judgment to the individual Board members pursuant to the Charitable Immunity Act ("CIA"). See N.J.S.A. 2A:53A-7 to -11. We agree that the CIA does not afford a basis to grant summary judgment to the individual Board members because the CIA only provides immunity for members of boards which are themselves covered under the CIA. N.J.S.A. 2A:53A-7.1. A local board of education is not entitled to immunity under the CIA. Hamel v. State, 321 N.J.Super. 67, 77, 728 A.2d 264 (App.Div.1999). Therefore, the immunity for individual board members covered by the CIA does not apply to individual members of a local board of education.
Despite the erroneous basis for granting summary judgment to the individual members of the Board, we are satisfied that the judge did not err in granting summary judgment. "[A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it." Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 78, 628 A.2d 793 (App.Div.1993) (citing Isko v. Planning Bd., 51 N.J. 162, 175, 238 A.2d 457 (1968)).
On this record, there is no basis for individual liability of the Board members. Plaintiff conceded at argument that the Board members were not involved in any individual capacity in the events that led to plaintiff's injuries.
In determining whether a public entity is immune from suit, the court must ask whether "the Legislature intended to immunize the public entity from liability" under the present conditions. Rossi v. Borough of Haddonfield, 297 N.J.Super. 494, 498, 688 A.2d 643 (App.Div.), aff'd, 152 N.J. 43, 702 A.2d 1285 (1997). The above statute opens the Board itself to suit, but not the Board members. See, e.g., Porcelli v. Titus, 302 F.Supp. 726, 730 (D.N.J.1969), aff'd, 431 F.2d 1254 (3d. Cir.1970), cert. denied, 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971) (holding that the board of education *679 was amenable as a "person" to suit). Further, N.J.S.A. 18A:11-2 provides that a school board may "[s]ue or be sued by its corporate name." School boards are thus treated in a similar vein to corporate boards. The Board may be liable to suit as an entity, but in the absence of individual conduct that results in liability, the Board members are shielded from suit. No Board member engaged in any such conduct here.
We reverse the summary judgment granted defendants with respect to plaintiff's damages for pain and suffering and remand for further proceedings consistent with this opinion. We affirm the summary judgment granted to the individual Board members.
Reversed in part; affirmed in part.
NOTES
[1] Plaintiff refers to Jennifer Gerber.
[2] University of Medicine & Dentistry of New Jersey.
[3] Plaintiffs do not appeal the grant of summary judgment on the issue of punitive damages, nor do they appeal the summary judgment granted to the Township of Springfield.