**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3111-22

OMER JACKSON and
SHARONDA JACKSON,
per quod,

     Plaintiffs-Appellants,

v.

COUNTY OF HUDSON,
HUDSON COUNTY SHERIFF'S
OFFICE, and RENATO MAURE-
CASCARET,

     Defendants-Respondents,

and

ORIENTAL HAMLET, ALBERT
A. AZIZ, GEICO INDEMNITY
COMPANY,

     Defendants.

_____

Argued March 18, 2024 – Decided April 4, 2024

Before Judges Marczyk and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket Nos. L-4100-19 and L-5038-19.

Michael Scott Golner argued the cause for appellants (The Haddad Law Firm, PC, attorneys; Seamus Boyle and Nehal Modi, on the briefs).

Christopher Kennedy Harriott argued the cause for respondents County of Hudson and Hudson County Sheriff's Office (Florio Kenny Raval, LLP, attorneys; Edward Joseph Florio, of counsel and on the brief; Christopher Kennedy Harriott, on the brief).

Joseph Franck argued the cause for respondent Renato Maure-Cascaret (Inglesino Taylor, attorneys, join in the brief of respondents County of Hudson and Hudson County Sheriff's Office).

PER CURIAM

Plaintiffs Omer Jackson and Sharonda Jackson sued defendants County of Hudson, Hudson County Sheriff's Office, and Officer Renato Maure-Cascaret under the Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3, for injuries suffered by Omer[1] when his car was hit by a motor vehicle that was being pursued by Officer Maure-Cascaret. The trial court granted defendants' motion for summary judgment dismissing the claims. Plaintiffs appeal the

---

[1]  We use Omer's first name when the discussion is applicable only to him because he shares a surname with Sharonda. We intend no disrespect.

A-3111-22

corresponding May 2, 2023 order. Having reviewed the record de novo, we affirm.

## I.

On January 23, 2018, at approximately 5:00 a.m., Officer Maure-Cascaret of the Hudson County Sheriff's Department was conducting radar enforcement in Jersey City. At that time, he observed a vehicle, driven by defendant Oriental Hamlet,[2] pass through three consecutive red lights on Kennedy Boulevard. Officer Maure-Cascaret's radar captured Hamlet's vehicle traveling between sixty-eight and seventy miles per hour. The posted speed limit on Kennedy Boulevard is twenty-five miles per hour.

Officer Maure-Cascaret followed Hamlet and attempted to "close the gap" without turning on his patrol car's lights or sirens. Once he began following, Officer Maure-Cascaret radioed the on-duty communications officers to inform them he was following a vehicle traveling at a high speed. The vehicle subsequently slowed down, and Officer Maure-Cascaret initiated a traffic stop of Hamlet near the intersection of Kennedy Boulevard and Fairmount Avenue.

---

[2] On November 13, 2020, default was entered against Hamlet. Stipulations of dismissal with prejudice were filed as to defendants Albert A. Aziz and Geico Indemnity Company.

After both vehicles were stopped for several seconds, while Officer Maure-Cascaret called in Hamlet's license plate, Hamlet suddenly sped away.

Officer Maure-Cascaret again contacted the on-duty communications officers to report that the vehicle sped away, and he was going to pursue. Shortly thereafter, Hamlet sped through a red traffic signal at the intersection of Kennedy Boulevard and Communipaw Avenue and collided with Omer's car, which was traveling from Communipaw Avenue onto Kennedy Boulevard with a green signal in its favor.

The entire incident, from the time Officer Maure-Cascaret initially observed Hamlet's speeding, to the attempt to pull him over, to the accident terminating the pursuit, lasted approximately fifty seconds. The time period from when Officer Maure-Cascaret initiated the traffic stop of Hamlet's vehicle at Fairmount Avenue, to when Hamlet fled and then collided with Omer's car at Communipaw Avenue, was approximately thirty seconds and spanned approximately nine or ten blocks. At the time of the accident, Officer Maure-Cascaret was approximately one block behind Hamlet at the intersection of Kennedy Boulevard and Harrison Avenue, which the officer estimated was between 500 and 1,000 feet away. After Officer Maure-Cascaret reported the

collision, the communications officers informed him the vehicle Hamlet was driving was stolen.

On appeal, plaintiffs argue the trial court erred in his application of N.J.S.A. 59:5-2(b)(2), which confers immunity on police officers for injuries resulting from pursuits. Specifically, plaintiffs contend a jury should resolve the question of whether Officer Maure-Cascaret's decision to initiate the pursuit and his subsequent failure to terminate the pursuit violated the Attorney General's Vehicular Pursuit Policy (hereinafter "Guidelines") and was thus willful misconduct.

II.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists . . . [we] 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242

5

N.J. 450, 472 (2020) (second alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016); see also Memuda v. Gonzalez, 475 N.J.(Super. 15, 18-19 (App. Div. 2023). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We do not defer to the trial court's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

The applicable law governing the issues on appeal is well established. Tort claims made against public entities are governed by the conditions and limitations of the TCA. As a general proposition, liability of public entities is the exception, and immunity from liability is the rule under the TCA. Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999); see also N.J.S.A. 59:1-2 (declaring it "to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established [t]herein"); D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133-34 (2013) (explaining that the overall approach of the TCA is to broadly limit public entity liability). To that end, the public policy adopted by the Legislature is to construe the immunity provisions

6

of the TCA broadly and the liability provisions narrowly. Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 34 (App. Div. 2000).

Under N.J.S.A. 59:5-2(b)(2), neither a public entity nor a public employee is liable for any injury caused by an escaping or escaped person. Further, a public entity and public employee avoid liability for "any injury resulting from or caused by a law enforcement officer's pursuit of a person." N.J.S.A. 59:5-2(c). Thus, barring a finding of willful misconduct, Officer Maure-Cascaret cannot be found liable for plaintiffs' injuries sustained as a result of a validly commenced pursuit.[3] N.J.S.A. 59:3-14(a).

In Fielder v. Stonack, the Court defined "willful misconduct" in the context of police pursuits. 141 N.J. 101, 125 (1995). The Court explained with specificity the requirements for willful misconduct in the context of police pursuits, finding two elements must be satisfied: "1) disobeying either a specific lawful command of a superior or a specific lawful standing order and 2) knowing

---

[3] If a public employee is not liable for injuries arising from the employee's acts or omissions, the public entity employer will not be liable either. N.J.S.A. 59:2-2(b). An additional provision of the TCA limits the entity's liability for injuries caused by an employee's actions constituting willful misconduct. N.J.S.A. 59:2-10. Read together, these provisions result in no liability for the public entity defendants, whether the officer's acts constituted misconduct or not.

7

of the command or standing order, knowing that it is being violated and, intending to violate it." Ibid.

Here, viewing the record in a light most favorable to plaintiff, we conclude the trial court correctly determined there were no credible facts in the record to establish Officer Maure-Cascaret engaged in willful misconduct during his pursuit of Hamlet. The Guidelines state a police officer may only pursue a suspect if they have committed a first- or second-degree offense or if the officer reasonably believes the suspect poses an immediate threat to either the public or the officer. Off. of the Att'y Gen., New Jersey Vehicular Pursuit Policy § I(A)(1) (rev. 2009).

During his deposition, Officer Maure-Cascaret explained his decision to pursue Hamlet was based, in part, on Hamlet pulling away from the initiated traffic stop. Officer Maure-Cascaret explained this was a second-degree offense of eluding, N.J.S.A. 2C:29-2(b), warranting police pursuit. According to N.J.S.A. 2C:29-2(b), any person "operating a motor vehicle . . . who knowingly flees or attempts to elude any police or law enforcement officer . . . is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person." Considering the Guidelines in conjunction with the characterization of Hamlet's action as a second-degree offense under

8

N.J.S.A. 2C:29-2(b), Officer Maure-Cascaret's decision was authorized and did not constitute willful misconduct.

Plaintiffs next argue the trial court should permit a jury to determine whether Officer Maure-Cascaret's failure to terminate the pursuit of Hamlet constituted willful disobedience to the "standing orders" reflected in the Guidelines. They posit the officer's failure to terminate the pursuit violated both section I(C)(1)(f) of the Guidelines, which instructs a pursuing officer to terminate a pursuit "if there is a clear and unreasonable danger to the police officer or the public," and section I(C)(1)(d), which instructs officers to terminate vehicle pursuits where the "distance [between an officer's vehicle and the suspect's vehicle] becomes so great that further pursuit is futile." Plaintiffs aver that given the officer's proximity to the location of the accident, as evidenced by the surveillance footage submitted into evidence, and the time it took the officer to arrive at the scene of the accident, the officer was likely to be traveling more than twice the twenty-five mile per hour posted speed limit, creating an unreasonable danger in violation of the Guidelines.

As the trial court explained, the pursuit was of such a short duration that the accident occurred "before [Officer Maure-Cascaret] could even have a reasonable chance to terminate the pursuit." Moreover, the judge held in regard

9

to the use of excessive speed, "it's not just excessive speed that counts under [section I(C)(1)(f)]. It's whether it was reasonable for the officer to move at that excessive speed[.]" The judge concluded that finding Officer Maure-Cascaret acted improperly in pursuing Hamlet at the speed he traveled would be an unfair and illogical reading of the Guidelines.

Denying defendants' summary judgment motion would have required a factual dispute over whether Officer Maure-Cascaret demonstrated willful misconduct in both his decision to pursue Hamlet and his failure to terminate the pursuit prior to the collision. The undisputed facts reflect a pursuit on a virtually empty street before 5:00 a.m., lasting thirty seconds, for only nine blocks, with no order from a commanding officer to terminate the pursuit, and no expert report opining that his speed was unreasonable. There are no factual circumstances present in the record that could demonstrate willful misconduct and, therefore, no genuine dispute as to any material fact exists.

To the extent we have not specifically addressed any other contentions raised by plaintiffs, they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3111-22