809 A.2d 836 (2002)
355 N.J. Super. 162
Maureen F. HEENAN and Matthew Heenan, her husband, Plaintiffs-Appellants,
v.
Ralph T. GREENE, III and Township of Washington, Defendants-Respondents, and
SUZANNE K. Raggio and RONALD M. Raggio, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2002.
Decided November 20, 2002.
*837 Edward H. Mulvihill, Gibbsboro, argued the cause for appellants (Marmero & Mammano, attorneys; Mr. Mulvihill, on the brief).
LaTonya N. Bland, argued the cause for respondents (Capehart & Scatchard, attorneys; Robert A. Hicken, of counsel; Ms. Bland on the brief).
Before Judges SKILLMAN, CUFF and LEFELT.
The opinion of the court was delivered by CUFF, J.A.D.
In this appeal, we consider whether the presence of a herniated cervical disc with radiculitis satisfies the Tort Claims Act threshold to pursue a claim for pain and suffering. The motion judge found that the injury was not substantial and dismissed plaintiffs' complaint against the municipal defendants.[1] We affirm.
On June 12, 1998, the motor vehicle occupied by plaintiff Maureen Heenan was struck by a truck driven by defendant Ralph T. Greene, III, after the truck was struck by a motor vehicle driven by defendant Suzanne Raggio. Plaintiff was taken by ambulance to the hospital where she received treatment in the emergency room for facial lacerations, contusions, and complaints of pain in her left wrist, knee and head. Following examination and several diagnostic tests, plaintiff was discharged. On June 15, 1998, she consulted her personal physician. At that time, she complained of headaches, difficulty sleeping, low back pain, left shoulder pain, left arm pain, left leg pain, dizziness and fatigue. Dr. Biggiani diagnosed several conditions including acute sprain/strain of the cervicothoracic soft tissues, acute sprain/strain of the lumbar soft tissue, left shoulder sprain/strain, cervical disc syndrome with radicular sensation, post-traumatic cervicocranial syndrome, and post-traumatic myofascitis.
An MRI of the lumbar spine revealed degenerative disc changes at L4-L5 and L5-S1. An MRI of the cervical spine revealed a disc herniation at C5-C6. A May 26, 1999 nerve conduction study and needle EMG of the bilateral lower extremities *838 was normal. A June 23, 1999 nerve conduction study and EMG of the upper extremities revealed left C6 radiculitis. Between June 15, 1998 and July 1999, plaintiff received conservative treatment including physiotherapy and spinal manipulations.
Plaintiff is a special education teacher. She lost no time from work; however, she testified that she was required to transfer to the resource room because she was unable to physically restrain a student. She has lost no pay, benefits or opportunities for advancement. Plaintiff was physically active before the accident. She played competitive indoor soccer several times a week and had just participated in her first 5K run. Plaintiff remains physically active after the accident. In her deposition, plaintiff testified that she does interval training which she defined as walking for five minutes, running for two minutes, walking for five minutes, and running for two minutes. She related she can still play sports but needs frequent breaks. Plaintiff also reported that she can no longer perform household tasks in an uninterrupted fashion.
Plaintiff contends she has provided objective medical evidence of injury and this injury is substantial because her cervical function is substantially restricted. Defendants Greene and the Township concede plaintiff has presented objective evidence of injury but argue the injury is not serious enough to satisfy the statutory threshold.
Plaintiffs' claim against defendants Greene and the Township is governed by the New Jersey Tort Claims Act, specifically N.J.S.A. 59:9-2d. Subsection d provides:
No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.
It is undisputed that plaintiff meets the monetary threshold.
In Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), the Court considered whether permanent soft tissue injuries affecting plaintiff's neck and low back satisfied the statutory requirement of permanent loss of a bodily function. The Court held that "a plaintiff must sustain a permanent loss of the use of a bodily function that is substantial." Id. at 406, 696 A.2d 619. While the Court acknowledged that plaintiff's injuries were permanent, it held that her injuries were not substantial because she had returned to work and could function as a homemaker. Ibid.
Recently, the Court has addressed the same issue in two cases: Gilhooley v. County of Union, 164 N.J. 533, 753 A.2d 1137 (2000), and Kahrar v. Borough of Wallington, 171 N.J. 3, 791 A.2d 197 (2002).[2] In Gilhooley, the plaintiff slipped and fell on a wet floor in a public building. 164 N.J. at 536, 753 A.2d 1137. As a result of the fall, plaintiff fractured her nose and right patella. Ibid. The knee fracture left plaintiff with a complete loss of quadriceps power. Ibid. She was required *839 to undergo a surgical reconstruction of the knee. Ibid. Although she made a good recovery and returned to work, she regained function of her knee and right leg through the insertion of wires and pins which are permanent in nature. Id. at 536-37, 753 A.2d 1137. The Court held that plaintiff's injury satisfied the statutory threshold of a "permanent loss of a bodily function." Id. at 542, 753 A.2d 1137. The Court reasoned that plaintiff had lost forever the normal use of her knee. Furthermore, her knee could not function without the internal fixation devices. Id. at 542, 753 A.2d 1137. Going beyond the specific case presented by plaintiff, the Court stated
We are satisfied that the Legislature intended to include within the notion of aggravated cases those involving permanent injury resulting in a permanent loss of normal bodily function even if modern medicine can supply replacement parts to mimic the natural function. As is the case with dismemberment and disfigurement, when pins, wires, mechanisms and devices are required to make the plaintiff normal, the statutory standard is met. The fact that a physician has jury-rigged the knee to function with pins and wires in no way inhibits the characterization of that injury as the permanent loss of a bodily function. The same would be true of a plaintiff whose vision is restored with a lens, one whose hearing is restored with a hearing aid, and one whose heart is operating efficiently with a pacemaker or implanted valve. We conclude that those are all aggravated cases within the contemplation of the Legislature when it enacted the "permanent loss of bodily function" language and that they fall squarely within the "substantial" requirement of Brooks.

[Id. at 542-43, 753 A.2d 1137.]
The Court observed, however, that not every objectively determined permanent injury results in a substantial loss of a bodily function. Id. at 541, 753 A.2d 1137.
In Kahrar, the plaintiff fell in a hole while crossing the street. As a result of the fall, the plaintiff fractured her elbow and right ankle. 171 N.J. at 6, 791 A.2d 197. After the elbow fracture healed and following complaints of persistent pain, an MRI revealed a massive tear of the rotator cuff. Ibid. An open surgical procedure was required to repair the tear and a torn tendon. The procedure shortened the length of the tendon and reduced the shoulder range of motion by 40%. Id. at 6-7, 791 A.2d 197. Nevertheless, the plaintiff was able to return to work as a secretary two months after the surgery. Id. at 8, 791 A.2d 197.
Initially, the Court observed that a two-prong test had emerged from Brooks. A plaintiff must prove an objective permanent injury and a permanent loss of a bodily function that is substantial. Id. at 12, 791 A.2d 197 (citing Gilhooley, supra, 164 N.J. at 541, 753 A.2d 1137). The Court also recognized that the issue in Kahrar was the substantiality requirement of the Brooks test. Ibid. The Court noted that the rotator cuff and the tendon which required surgical repair were essential to every function of the arm. Id. at 15-16, 791 A.2d 197. The Court considered the injury and repair analogous to the injury and knee reconstruction in Gilhooley. Id. at 15, 791 A.2d 197.
In Gerber v. Springfield Bd. of Educ., 328 N.J.Super. 24, 744 A.2d 670 (App.Div. 2000), cited with approval in Kahrar, a student was beaten by a fellow student and received serious facial injuries, including multiple fractures of the nasal septum. In *840 spite of reconstructive surgery, plaintiff has difficulty breathing through the nose and suffers from intermittent but recurring headaches. Id. at 31, 744 A.2d 670. We held that plaintiff had submitted objective evidence of permanent injury and substantiality which defeated a motion for summary judgment. Id. at 35-36, 744 A.2d 670. We observed that plaintiff had presented medical evidence that the basic life function of respiration was permanently restricted to a significant degree. Id. at 36, 744 A.2d 670.
Here, as in Gilhooley, Kahrar, and Gerber, plaintiff has established an objective permanent injury, a herniated cervical disc at C5-C6. We conclude, however, that this is one of those cases in which a permanent injury does not result in a substantial loss of a bodily function. Plaintiff has not sustained the type of aggravated injury discussed in Gilhooley, Kahrar and Gerber.
Notably, in Gilhooley and Kahrar, both plaintiffs sustained injuries that would have rendered an extremity useless without significant surgical intervention. In Gerber, plaintiff's respiratory function was compromised. That is not the situation in this case. Plaintiff experiences some restriction of movement in her neck but continues to play sports and does interval training. She can perform household chores to some extent. Plaintiff continues to work as a teacher. She did not miss a day of work. Although she no longer teaches emotionally disturbed children, she continues to work as a teacher with no loss of pay, benefits or opportunity for advancement. Plaintiff's limitation of movement is analogous to the limitations experienced by the plaintiff in Brooks, which were found insubstantial. Brooks, supra, 150 N.J. at 406, 696 A.2d 619.
The order granting defendants Greene and the Township's motion for summary judgment is affirmed.
Affirmed.
NOTES
[1] Plaintiffs' claims against defendants Suzanne K. and Ronald M. Raggio have been settled.
[2] The Court has also recently decided Ponte v. Overeem, 171 N.J. 46, 791 A.2d 1002 (2002). We do not discuss Ponte here because it involved neither a permanent nor a substantial injury.