823 A.2d 26 (2003)
176 N.J. 324
Joseph M. KNOWLES and Susan M. Knowles, his wife, Plaintiffs-Appellants,
v.
MANTUA TOWNSHIP SOCCER ASSOCIATION, County of Gloucester, John Does 1-10 (fictitious), John Does 11-20 (fictitious) and John Does 21-30 (fictitious), jointly, severally and in the alternative, Defendants,
Township of Mantua, Defendant-Respondent.
Supreme Court of New Jersey.
Argued February 20, 2003.
Decided May 29, 2003.
*27 Mark S. Kancher, Mt. Laurel, argued the cause for appellants (Shaffer & Scerni, attorneys).
Robert A. Baxter, Mt. Laurel, argued the cause for respondent (Capehart & Scatchard, attorneys).
The opinion of the Court was delivered by COLEMAN, J.
The primary issue raised in this appeal is whether plaintiff Joseph Knowles's injuries, sustained when his car was struck by a gate in a park maintained by defendant Township of Mantua, constitute a "permanent loss of a bodily function" that is substantial, warranting recovery of damages for pain and suffering under N.J.S.A. 59:9-2d of the New Jersey Tort Claims Act (TCA). The trial court granted summary judgment to the Township of Mantua on the ground that plaintiff failed to satisfy the TCA's threshold as explicated in Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997), and Gilhooley v. County of Union, 164 N.J. 533, 753 A.2d 1137 (2000). The Appellate Division agreed with the trial court's analysis. We disagree, and hold that the trial court erred when it dismissed plaintiff's claim because there is objective medical evidence establishing a prima facie case that plaintiff suffered an injury that meets the TCA threshold.

I.
On the afternoon of March 7, 1999, plaintiff, a forty-three-year-old teacher with the Camden County Vocational Schools, visited Chestnut Branch Park in the Township of Mantua to watch a soccer game. Chestnut Branch Park is owned and maintained by the Township of Mantua. The entrance to the park has a paved driveway and a large, hinged barricade made of spruce and metal, used to block the entrance when the park is closed. Plaintiff drove his automobile along the driveway without incident when he entered the park. As he was exiting, however, the large barricade swung from its open position and crashed through his windshield at eye level, striking his upper body. The barricade hit plaintiff's left shoulder, knocking him over the seat and leaving him dazed. The damages to the automobile exceeded its value.
Following the accident plaintiff was brought to Underwood Memorial Hospital where x-rays were taken of his neck and back. He was released the same day and told to seek follow-up care. Plaintiff then saw Dr. Herman who prescribed pain medication and recommended physical therapy. Twelve days after the accident, plaintiff was evaluated by Dr. T. Leonard Probe, a chiropractor, who diagnosed him with sprain and strain injuries to the soft tissues of his neck and back, sciatic neuritis of the left leg and possible disc herniation in the lower back. Dr. Probe recommended chiropractic treatment, an MRI, and a neurological examination.
In June 1999, complaining of rare headaches, neck pain and stiffness, severe low *28 back pain, and numbness in his left leg, plaintiff sought treatment from Dr. Russell Abrams, a neurologist. After conducting a Needle EMG test, Dr. Abrams diagnosed plaintiff with cervical and thoracic sprain and strain and lumbrosacral radiculopathy with abnormal EMG study. ("Radiculopathy" is defined as "disease of the spinal nerve roots.") Stedman's Medical Dictionary 1187 (5th Unabridged Lawer Ed. 1982). Dr. Abrams recommended continued chiropractic care, physical therapy, an MRI of the lumbrosacral spine, and prescription painkillers.
Plaintiff received an MRI, EMG, and physical examination in July 1999 from Dr. Robert Ponzio, an orthopedist. That testing disclosed a central disc herniation at L4-L5, post-traumatic discogenic pain syndrome, L4-L5 radiculopathy on the left, and tendonitis in plaintiff's left shoulder. Dr. Ponzio concluded that the accident permanently damaged plaintiff's lumbar spine, but that the tendonitis in his shoulder could improve with treatment. Plaintiff's back pain had not improved when he returned to Dr. Ponzio in late August 1999. Finally, in a February 2000 report, Dr. Probe concluded that plaintiff suffered from the following injuries: "post traumatic cervicothoracic and lumbosacral sprain/strain with myofascitis, lumbar disc herniation, L4-L5, lumbar radiculopathy and impingement tendonitis of the left shoulder." In the doctor's opinion, plaintiff's symptoms were "attribut[able] to the healing residuals of fibrosis of repair of injured muscle, ligamentous tissue, and ... disc damage. They are permanent effects of the injuries...."
Plaintiff complains that he currently suffers from neck and back pain that radiates into the lower back region, severe lower back pain that goes into his left buttock and numbness and tingling from his left leg to his foot. He asserts that those injuries have had adverse, life-altering consequences. Although plaintiff has only missed about one week of work, he has had to adjust his work schedule and job-related physical exertions, and has given up a second job of refereeing high school soccer games. He states that his injuries have disturbed his sleep, and that his pain has made him irritable and moody. He cannot sit for more than thirty minutes, or stand for more than fifteen to thirty minutes without experiencing pain; he cannot walk for more than a quarter mile. He alleges that he is no longer able to play baseball or softball, bowl, or complete household projects.
The present litigation was instituted in October 1999, against Gloucester County (County), the Township of Mantua (Township), and the Mantua Township Soccer Association (Association). The County and the Association are no longer parties. The Township filed a motion for summary judgment, arguing that plaintiff's injuries did not prevent him from functioning in his daily life and did not otherwise rise to the level of a "permanent loss of a bodily function," within the meaning of N.J.S.A. 59:9-2d and as defined by Brooks and Gilhooley. The trial court concluded that plaintiff's herniated disc, soft tissue injuries, accompanying lifestyle limitations, and "constant pain" did not satisfy the threshold for recovery for pain and suffering under the TCA as described in Brooks and Gilhooley. The Appellate Division affirmed substantially for the reasons expressed by the trial court. We granted plaintiff's petition for certification, 172 N.J. 359, 798 A.2d 1272 (2002), and now reverse.

II.
The TCA, N.J.S.A. 59:1-1 to 12-3, controls when and under what circumstances public entities are liable for non-economic damages such as pain and suffering. The TCA provision at issue here, regarding *29 public entity liability for pain and suffering, is found in N.J.S.A. 59:9-2d. At the time of the accident, the statute provided:
No damages shall be awarded against a public entity ... for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function ... where the medical treatment expenses are in excess of [$1,000.00.][1]
[Ibid.]
This Court has established a two-pronged test that a plaintiff must satisfy in order to collect pain and suffering damages under N.J.S.A. 59:9-2d. A plaintiff must show "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley, supra, 164 N.J. at 540-41, 753 A.2d 1137 (citing Brooks, supra, 150 N.J. at 402-03, 696 A.2d 619). Because this case was dismissed on a motion for summary judgment, we must determine whether the evidence, "viewed in the light most favorable to [plaintiff, is] sufficient to permit a rational factfinder" to find that plaintiff's injuries satisfy both prongs of the Brooks/Gilhooley test. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).

III.
Plaintiff argues that the trial court erred in granting summary judgment to the Township because he has demonstrated by objective medical evidence that his injuries satisfy the high threshold of N.J.S.A. 59:9-2d. He argues that the first prong of the Brooks/Gilhooley test is not in dispute because he has provided objective medical evidence of a permanent injury. The EMGs were found to be abnormal and the MRI objectively showed disc herniation at L4-L5. With respect to the second prong, plaintiff argues that he has suffered "a permanent loss of a bodily function that is substantial" because of the significant adverse impact his injuries have had on his ability to engage in many of the activities he previously enjoyed. He contends that his inability to sit or stand comfortably, to referee, and to exercise, as well as the loss of feeling in his leg, are comparable to, or worse than, injuries that this Court has found compensable under N.J.S.A. 59:9-2d. See, e.g., Kahrar v. Borough of Wallington, 171 N.J. 3, 6, 791 A.2d 197 (2002) (torn rotator cuff); Gilhooley, supra, 164 N.J. at 536, 753 A.2d 1137 (fractured patella).
The Township argues that plaintiff's physical limitations, numbness, and chronic discomfort do not meet N.J.S.A. 59:9-2d's high threshold for recovery. The Township states that the TCA is intended to protect public entities from liability for pain and suffering for all but the most egregious injuries. The Township contends that plaintiff's injuries are not as severe as those suffered in Kahrar or Gilhooley, but rather are comparable to those suffered by the plaintiff in Brooks, supra, 150 N.J. at 399-400, 696 A.2d 619. We declined to allow the Brooks plaintiff to recover for pain and suffering because her injuries restricted, but did not substantially impair, any of her bodily functions. Id. at 406, 696 A.2d 619.

A.
We find that plaintiff has met the first prong of the Brooks/Gilhooley test by presenting proof of "an objective permanent injury." Gilhooley, supra, 164 N.J. at 541, *30 753 A.2d 1137. Plaintiff has undergone extensive medical testing, including EMGs and an MRI, that has revealed lumbar disc herniation and radiculopathy caused by the disc herniation. His doctors have concluded that his injuries are permanent. Therefore, the remaining issue before us is whether, accepting "plaintiff's version of the facts [and] giving plaintiff the benefit of all favorable inferences that version supports," Brooks, supra, 150 N.J. at 398, 696 A.2d 619 (citing Brill, supra, 142 N.J. at 523, 666 A.2d 146), plaintiff's injuries could constitute a "permanent loss of a bodily function that is substantial" under the TCA. Gilhooley, supra, 164 N.J. at 541, 753 A.2d 1137; N.J.S.A. 59:9-2d.

B.
The determination of whether a plaintiff's injury satisfies the "permanent loss of a bodily function that is substantial" threshold under the TCA depends on a fact-sensitive analysis. Gilhooley, supra, 164 N.J. at 541, 753 A.2d 1137. We held in Brooks and in Ponte v. Overeem, 171 N.J. 46, 791 A.2d 1002 (2002), that the plaintiffs' injuries did not satisfy the threshold, and in Gilhooley and Kahrar that they did. Our task is to determine whether the facts and circumstances of plaintiff's injuries place him on that part of the "continuum of cases" in which this Court has determined that an injury is substantial and permanent. Gilhooley, supra, 164 N.J. at 541, 753 A.2d 1137. Clearly, there can be no per se rule that would be decisive in all cases of this kind. Rather, "it is the nature or degree of the ongoing impairment that determines whether a specific injury meets the threshold requirement under the Tort Claims Act." Ponte, supra, 171 N.J. at 53, 791 A.2d 1002 (noting that this principle is derived from Kahrar). However, our past precedents are useful in classifying injuries as either "substantial" or minor.
First, we have recognized that "injuries causing blindness, disabling tremors, paralysis and loss of taste and smell" satisfy the threshold because they are inherently "objectively permanent and implicate the substantial loss of a bodily function (e.g., sight, smell, taste, and muscle control)." Gilhooley, supra, 164 N.J. at 541, 753 A.2d 1137 (citing Brooks, supra, 150 N.J. at 403, 696 A.2d 619). Second, we have held that when a plaintiff suffers an injury that permanently would render a bodily organ or limb substantially useless but for the ability of "modern medicine [to] supply replacement parts to mimic the natural function," that injury meets the threshold. Id. at 542-43, 753 A.2d 1137. Third, we have concluded that there must be a "physical manifestation of [a] claim that [an] injury ... is permanent and substantial." Ponte, supra, 171 N.J. at 54, 791 A.2d 1002. An injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain, will not suffice because "[a] plaintiff may not recover under the Tort Claims Act for mere `subjective feelings of discomfort.'" Gilhooley, supra, 164 N.J. at 540, 753 A.2d 1137 (quoting Brooks, supra, 150 N.J. at 403, 696 A.2d 619 (citation omitted)). Finally, we have recognized that neither an absence of pain nor a plaintiff's ability to resume some of his or her normal activities is dispositive of whether he or she is entitled to pain and suffering damages under the TCA. Kahrar, supra, 171 N.J. at 15-16, 791 A.2d 197.
Applying those principles to the present case, we conclude that plaintiff's alleged permanent loss of substantial bodily functions more closely resembles Gilhooley and Kahrar than Brooks and Ponte. In Gilhooley, the plaintiff fractured her right patella in a fall, injuring it so severely that her knee would have been inoperative *31 without surgically inserted pins. Gilhooley, supra, 164 N.J. at 536, 541-42, 753 A.2d 1137. In Kahrar, the plaintiff suffered a "massive tear of her rotator cuff." Kahrar, supra, 171 N.J. at 14, 791 A.2d 197. The injury and resulting surgery left her with a permanently shortened tendon and a forty percent decreased range of motion in her arm. Id. at 7-8, 791 A.2d 197. Both of those plaintiffs presented objective medical evidence linking an injured body part to the plaintiff's inability, without extensive medical intervention, to perform certain bodily functions.
In contrast, the plaintiffs in Brooks and Ponte complained that their injuries left them unable to perform certain tasks without pain, but the injuries were not severe enough or verifiable enough to constitute a "permanent loss of a bodily function." Brooks, supra, 150 N.J. at 406, 696 A.2d 619; Ponte, supra, 171 N.J. at 54, 791 A.2d 1002. Brooks was decided in favor of the defendant because the plaintiff's daily activities, although painful, were not substantially precluded by her injuries. Brooks, supra, 150 N.J. at 406, 696 A.2d 619. In addition, Brooks suffered soft tissue injuries that resulted in pain but were not as conducive to medical verification as a structural injury, such as a fractured patella or a herniated disc. Id. at 399, 696 A.2d 619 (describing the plaintiff's injuries as involving "inflammation of muscle tissue" and "pain, tenderness, and stiffness of joints, capsules, and adjacent structures"). The Ponte plaintiff also failed to demonstrate a permanent, substantial loss of a bodily function. Although one of his doctors found that he suffered from chondromalacia and internal derangement of the knee that was permanent, he was able to return to his former athletic activities and yardwork, albeit with some restrictions. Ponte, supra, 171 N.J. at 50-51, 791 A.2d 1002.
In contrast to Brooks and Ponte, the plaintiff in this case has presented objective medical evidence of a permanent injury that is directly responsible for the substantial loss of several bodily functions: the lack of feeling in his left leg and the inability to stand, sit, or walk comfortably for a substantial amount of time, engage in athletics, and complete household chores. Although plaintiff is able to continue working as a teacher, we have declined to adopt the ability to work as a litmus test for recovery of pain and suffering damages under the TCA. Kahrar, supra, 171 N.J. at 14-15, 791 A.2d 197. Plaintiff's job is fairly sedentary, and
distinctions between sedentary and non-sedentary plaintiffs in applying the Tort Claims Act standard are inappropriate. Rather, the appropriate focus is on the degree of injury and impairment.... If the loss of bodily function is permanent and substantial, as in this case, a plaintiff's eligibility to recover pain and suffering damages will not be defeated merely because she can perform some routine functions almost as well as she could prior to her injury.
[Ibid.]
Notwithstanding the fact that plaintiff is able to work, he has nonetheless presented evidence of a substantial inability to perform many of the functions he previously enjoyed.
Finally, plaintiff alleged in his petition for certification and at oral argument that he is unable to engage in sexual relations with his wife as a result of the injuries. Although such a permanent loss presumably would satisfy the second prong of the Brooks/Gilhooley test, we are unable to find medical evidence in the record connecting that claim to the injuries. Consequently, that claim has not been considered in our determination.
*32 This case is to be distinguished from recent cases in which the Appellate Division held that although the plaintiffs presented objective medical evidence of permanent injuries, those injuries were not severe enough to fulfill the second prong of the Brooks/Gilhooley test. Heenan v. Greene, 355 N.J.Super. 162, 809 A.2d 836 (App.Div.2002); Newsham v. Cumberland Reg'l High Sch., 351 N.J.Super. 186, 797 A.2d 878 (App.Div.2002). Under our fact-sensitive analysis, those plaintiffs'"degree of injury and impairment" were not as great as plaintiff's in this case. Kahrar, supra, 171 N.J. at 15, 791 A.2d 197. In Heenan, the plaintiff suffered a cervical disc herniation after her car was rear-ended by a truck driven by an employee of Washington Township. Heenan, supra, 355 N.J.Super. at 163-64, 809 A.2d 836. Although she was required to change to a less strenuous teaching job, "[s]he did not miss a day of work," can do household chores but not "in an uninterrupted fashion," and has begun to play sports with "frequent breaks." Id. at 164, 167, 809 A.2d 836. Similarly, although the Newsham plaintiff suffered a compression fracture of her seventh thoracic vertebra as a result of a cheerleading accident, the fracture was "well-healed" within two years of the injury. Newsham, supra, 351 N.J.Super. at 187-88, 797 A.2d 878. That plaintiff complained that she was unable to sit for longer than forty-five minutes, could not lift more than minimal weight, could not exercise as strenuously as she once could, and required "medicine and frequent breaks to complete her eight-hour work shift." Id. at 190, 797 A.2d 878. However, the trial court found "that plaintiff was able to perform well in school, and work while attending school." Id. at 190, 797 A.2d 878.
In the present case, plaintiff has provided objective medical evidence of injuries that have affected his life much more severely than in Brooks, Ponte, Newsham, or Heenan. "Where plaintiff's medical proofs support a claim of permanent injury that is based on objective evidence and not merely on subjective complaints, such evidence raises an issue for the jury, and removes the case from the realm of summary judgment." Gerber v. Springfield Bd. of Educ., 328 N.J.Super. 24, 35, 744 A.2d 670 (App.Div.2000) (citing Mack v. Passaic Valley Water Comm'n, 294 N.J.Super. 592, 600, 684 A.2d 77 (App. Div.1996)). We find that plaintiff's evidence satisfies the TCA threshold, thereby permitting a jury to determine whether plaintiff is entitled to damages for pain and suffering.

IV.
The judgment of the Appellate Division is reversed and the matter is remanded to the Law Division for trial.
VERNIERO, J., dissenting.
The Court holds that Joseph M. Knowles (plaintiff) has satisfied the threshold for recovery of non-economic damages against a public entity under the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the Act). In so doing, it concludes that plaintiff's asserted injuries resemble those experienced by the successful claimants in Kahrar v. Borough of Wallington, 171 N.J. 3, 791 A.2d 197 (2002), and Gilhooley v. County of Union, 164 N.J. 533, 753 A.2d 1137 (2000). I dissented in those two cases and likewise would do so here, assuming that the facts of this case were similar to those found in Kahrar and Gilhooley.
More importantly, however, I do not believe that the three cases resemble each other. Rather, I find that plaintiff's injuries are comparable to those sustained by the claimant in Brooks v. Odom, 150 N.J. 395, 696 A.2d 619 (1997). The Brooks *33 claimant suffered from stiffness, muscle spasms, dizziness, decreased range of motion in her neck, and post-traumatic headaches. Id. at 398-400, 696 A.2d 619. In addition, the claimant experienced "severe lower back pain that radiate[d] into her left leg" and had "difficulty in performing household chores, including vacuuming, carrying groceries, or other activities that require[d] lifting or bending." Id. at 400, 696 A.2d 619. Notwithstanding those conditions, the Court affirmed the grant of summary judgment in the public entity's favor. In so doing, we accepted that the claimant "experience[d] pain and that the limitation of motion in her neck and back [was] permanent." Id. at 406, 696 A.2d 619.
In this case, plaintiff sustained injuries to his back and neck. As a result, he complains of headaches, neck and back pain, and numbness in his left leg. Plaintiff asserts that those symptoms have disturbed his sleep and hampered his ability to play sports, complete household projects, stand or sit for extended periods, and engage in lengthy walks. Although no doubt significant from plaintiff's perspective, his injuries do not satisfy the Act's high threshold for recovery. Plaintiff's circumstances are similar to those encountered by the Brooks claimant and, therefore, warrant the same result. Without an award for non-economic damages, plaintiff still would be entitled to economic damages consistent with the Act's two-tier approach. See Kahrar, supra, 171 N.J. at 26, 791 A.2d 197 (Verniero, J., dissenting) (explaining how "Act distinguishes between economic and non-economic damages, making claims for the latter more difficult to sustain").
Regarding the Act's approach, I previously have recited the statute's history and purpose, id. at 16-20, 791 A.2d 197 (Verniero, J., dissenting), and need not repeat that discussion here. Suffice it to say that the Legislature intended an elevated threshold for recovery of non-economic damages such as pain and suffering to protect "the public coffers." Brooks, supra, 150 N.J. at 402, 696 A.2d 619. That the Legislature would so act is consistent with the notion that such damages, by their nature, are more, subjective and less certain than economic damages. See Comment, N.J.S.A. 59:9-2 (describing pain and suffering as "non-objective" type of damage); Ayers v. Jackson Township, 106 N.J. 557, 571, 525 A.2d 287 (1987) (explaining that "Act's ban against recovery of damages for `pain and suffering resulting from any injury' is intended to apply to the intangible, subjective feelings of discomfort that are associated with personal injuries").
The Court appears to center its analysis on the extent to which a claimant may complete normal tasks rather than on whether there has been "a permanent loss of the use of a bodily function that is substantial." Brooks, supra, 150 N.J. at 406, 696 A.2d 619 (emphasis added). That type of analytical framework-risks lowering the Act's bar to recovery in a manner not intended by lawmakers. In sum, I continue to believe that Brooks reflects an accurate reading of the Act, and I agree with the public entity in this case that plaintiff's claim is like the one in Brooks. Accordingly, I respectfully dissent and would affirm the judgment of the Appellate Division.
For reversal and remandmentChief. Justice PORITZ and Justices COLEMAN, LONG, LaVECCHIA, ZAZZALI, and ALBIN6.
For affirmanceJustice VERNIERO1.
NOTES
[1] The limit was increased to $3,600.00 from $1,000.00 effective Sept. 21, 2000. L. 2000, c. 126, § 32. The amount of medical treatment expenses is not at issue here.