**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3290-15T3

ANA L. PAZ,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,

    Defendant-Respondent.

_____

Submitted April 4, 2017 — Decided November 1, 2017

Before Judges Messano and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Docket No. L-0991-
14.

Ginarte, O'Dwyer, Gonzalez, Gallardo &
Winograd, LLP, attorneys for appellant (Robert
H. Baumgarten, of counsel and on the briefs).

Schwab, Haddix & Millman, attorneys for
respondent (John N. Kaelin, III, of counsel
and on the brief).

PER CURIAM

    Plaintiff appeals from an order that granted summary judgment

to the State of New Jersey, dismissing her personal injury claim

on the ground that she lacked adequate proof she suffered a permanent and substantial injury to permit recovery under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3.  We affirm.

N.J.S.A. 59:9-2(d) bars recovery for pain and suffering from a public entity except for "cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 3,600.00."  To recover pain and suffering damages under this provision, "[a] plaintiff must show '(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial.'"  Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329-30 (2003) (quoting Gilhooley v. Cty. of Union, 164 N.J. 533, 540-41 (2000) and citing Brooks v. Odom, 150 N.J. 395, 402-03 (1997)).  Our review of the summary judgment order here requires us to "determine whether the evidence, 'viewed in the light most favorable to [plaintiff, is] sufficient to permit a rational factfinder' to find that plaintiff's injuries satisfy both prongs of the Brooks/Gilhooley test."  Id. at 329-30.

The evidence, viewed in the light most favorable to plaintiff, can be summarized as follows.[1]

---

[1]  The State also sought summary judgment on the ground that plaintiff failed to prove it had notice of the defective condition and its failure to repair the condition was not palpably

Plaintiff was employed by Parsons Corporation to inspect vehicles at the Rahway Motor Vehicle Commission facility. On March 21, 2012, she tripped and fell over a broken concrete sidewalk that abutted the inspection bays.

Plaintiff sought medical attention the next day at U.S. HealthWorks, complaining of pain in her neck and shoulders. She reported having neck pain prior to her fall. X-rays taken of the lumbosacral spine, the cervical spine and the left shoulder were negative. She was diagnosed as having lumbar sprain and strain, cervical sprain, bilateral shoulder sprain and strain and rotator cuff syndrome.

On May 8, 2012, plaintiff underwent an MRI of the cervical spine without contrast administration. The report included the following findings:

> At C6-C7 <u>minimal bulging</u> is seen mainly ventrally. Thecal sac remains centric. Neural foramina are patent. Facet joints are unremarkable. No abnormality is seen at C7-T1 or T1-T2.
>
> . . . .
>
> Posterocentral subligamentous <u>disc herniation</u> C4-C5 and C5-6 with mild effacement ventral space. No intrinsic cord abnormality or central or foranimal stenosis. Hemangioma T2

unreasonable. The trial court found a genuine issue of material fact as to this argument, precluding summary judgment. Because the State did not cross-appeal from that ruling, we need not discuss the facts relevant to that point.

A-3290-15T3

[(Emphasis added).]

A lumbar spine MRI on May 8, 2012, resulted in the following findings:

> 1.   Disc bulge L4-L5 with facet prominence, thecal sac indentation, and bilateral foranimal narrowing.
>
> 2.   Posterocentral disc herniation L5-S1 with thecal sac indentation.

> [(Emphasis added).]

On September 25, 2012, plaintiff was admitted to Morristown Memorial Hospital, where she underwent an L4-5 microdiskectomy performed by Dr. Richard S. Nachwalter. Upon admission, her chief complaint was right lower extremity pain that persisted despite physical therapy and medication. The report of her physical examination states, "She stands erect. She is able to lie down on the exam table. Her motor strength is 5/5 throughout both lower extremities. She has positive tension to the right, negative tension on the left."

At her two-week follow-up visit, plaintiff reported "her leg pain [was] largely resolved" and she was "overall . . . quite pleased with her early results." A physical examination revealed her motor strength was "5/5 throughout both lower extremities." Dr. Nachwalter stated she was "doing very well" and that her prognosis was "good."

At a follow-up visit one month later, plaintiff had "an overall sense of stiffness" and motor strength of "5/5 throughout both lower extremities." Dr. Nachwalter found her prognosis was good and enrolled her in physical therapy.

In his report of plaintiff's examination on December 12, 2012, Dr. Nachwalter stated plaintiff had "more pain than [he] would expect." Plaintiff described persistent pain in her back, as well as bilateral lower extremity pain, and bilateral knee pain, and had "exquisite tenderness to light tough of the skin throughout her lumbar spine." Dr. Nachwalter ordered "an MRI of the lumbar spine to rule out a recurrence." He still found plaintiff's prognosis was "good."

Following his last post-operative examination of plaintiff, Dr. Nachwalter noted she described "some persistent discomfort predominantly in her low back." He reported that plaintiff stood erect and ambulated without any assistive devices. Dr. Nachwalter stated plaintiff's motor strength was 5/5 through both lower extremities. His review of the lumbar spine MRI revealed "no significant herniations or stenosis" and no "significant neural compression." Dr. Nachwalter discharged plaintiff from care, stating, her prognosis was "good," and "[s]he has reached maximum medical benefit." She was released to return to work January 8, 2013.

Plaintiff remained employed by Parsons until 2014, approximately two years after her accident. Plaintiff has not had any treatment for her physical injuries since her last physical therapy visit in December 2012.

Plaintiff filed the instant complaint in March 2014.

Plaintiff's medical expert, Dr. Marvin E. Friedlander, examined her in October 2015. At the time, plaintiff was only taking over-the-counter analgesics.

Dr. Friedlander noted the post-operation study demonstrated "a good surgical outcome." Dr. Friedlander agreed with the conclusions in the MRI reports relating to the MRI of the cervical spine and x-ray of the lumbar spine. Based upon his physical examination of plaintiff, Dr. Friedlander stated there appeared to be tenderness and muscle spasms in the lumbar spine and cervical region. He found "decreased range of motion in all directions in her neck," motor examination of "5/5 in all muscle groups, upper and lower extremities," "normal sensation to pin and touch throughout with some mild decrease in the L5 dermatome on the right only," reflexes that "were all 2/4 and symmetric," a normal gait and no abnormal reflexes.

Dr. Friedlander found plaintiff's injuries to be causally related to the accident[2] and listed "[d]iagnoses including cervical disc herniation, chronic neck pain, cervical neck pain, cervical radiculopathy, lumbar disc herniation, lumbar radiculopathy, chronic back pain, status post lumbar microdiskectomy and failed back syndrome." He opined "that the above-mentioned diagnoses are of permanent nature," that plaintiff would suffer with chronic pain on a permanent basis and that it was unlikely "there would be any significant improvement in plaintiff's functional abilities." He did not identify what, if any, "functional abilities" had been impaired by her injury.

At the time of her deposition, plaintiff had no medical restrictions due to her physical complaints and took either aspirin or Tylenol for pain. After her accident, she joined a gym because she wanted to walk on the treadmill but found it painful to do so and stated she intended to quit. She testified her ability to perform household tasks had been limited. She can cook, wash dishes and do some cleaning but her husband had taken over most of the cleaning chores. Her socializing was limited; she stated

---

[2] Plaintiff told Dr. Friedlander that she had no problems with her neck or back before the accident. At her deposition, however, plaintiff stated she suffered injuries to her neck and back in a motor vehicle accident in 1998. She was taken to the hospital by ambulance and underwent physical therapy for several weeks thereafter.

she can no longer go dancing. In addition, although no physician had stated she was unable to work, plaintiff testified she was not working due to debilitating back pain and physical limitations. However, she did take a course in 2014 "to learn how to take care of elderly people." Her applications for permanent disability were denied by the Social Security Administration twice. Plaintiff was divorced from her third husband in April 2014 and married her fourth husband in October 2014. She continues to engage in relations with her husband although she stated it caused her pain to do so.

Neither Dr. Morris Horwitz, plaintiff's orthopedic expert for her workers compensation claim, nor Dr. Ana Miguel Komotar, a neurologist engaged to examine plaintiff regarding her workers compensation claim, reviewed the MRIs prior to reaching their conclusions. Based upon his review of MRI reports, other documents and a physical examination, Dr. Horwitz found plaintiff sustained herniated discs at C4-5 and C5-6, that she was status post L4-5 microdiskectomy, and concluded she suffered permanent impairments of 25% of her right leg and left leg and an orthopedic disability of 65% of partial total. Based upon her review of documents and a physical examination, Dr. Komotar diagnosed plaintiff with "Cervical radiculopathy, Herniated cervical discs C4 to C6, Lumbrosacral radiculopathy, Herniated discs L4 to S1 with nerve

root impingement requiring discectomy at L4-L5, Adjustment disorder with anxious features and depressed mood." Dr. Komotar concluded these diagnoses were causally related to the accident and that plaintiff suffered "a permanent neurological disability of 50% of partial total and a permanent neuropsychiatric disability of 35% of total."

At oral argument on the summary judgment motion, plaintiff's counsel stated she suffered a permanent loss of bodily function that is substantial by virtue of the limitations on her ability to bend, twist, walk, stand and sit. He argued she had permanent pain throughout her lumbar spine and that there was objective evidence of that. Relying upon the Supreme Court's decision in Brooks, supra, 150 N.J. at 402-03, the trial court found "the injuries complained of by [plaintiff] fail to establish that she sustained a permanent loss of bodily function that is substantial" and granted summary judgment to the State, dismissing plaintiff's claim for pain and suffering.

On appeal, plaintiff argues the trial court erred in failing to acknowledge that she suffered a permanent injury that is substantial. She states the uncontroverted evidence establishes that, as a result of the accident, plaintiff suffered cervical and lumbar disc herniations that required surgery, that she was out of work for substantial periods of time and is unemployed at

present. The State counters that plaintiff's proofs failed to vault the TCA's limitation on recovery for pain and suffering.

There is no per se rule to determine whether an injury is substantial and permanent. Knowles, supra, 176 N.J. at 331. "[I]t is the nature or degree of the ongoing impairment that determines whether a specific injury meets the threshold requirement under the Tort Claims Act." Ponte v. Overeem, 171 N.J. 46, 53 (2002) (citing Kahrar v. Borough of Wallington, 171 N.J. 3, 16 (2002)).

In Knowles, the Court reviewed precedents applicable to our fact-sensitive analysis. Addressing the nature of injuries that fall within the exception to immunity, the Court stated:

> First, we have recognized that "injuries causing blindness, disabling tremors, paralysis and loss of taste and smell" satisfy the threshold because they are inherently "objectively permanent and implicate the substantial loss of a bodily function (e.g., sight, smell, taste, and muscle control)." Gilhooley, supra, 164 N.J. at 541 (citing Brooks, supra, 150 N.J. at 403). Second, we have held that when a plaintiff suffers an injury that permanently would render a bodily organ or limb substantially useless but for the ability of "modern medicine [to] supply replacement parts to mimic the natural function," that injury meets the threshold. 164 N.J. at 542-43.
>
> [Knowles, supra, 176 N.J. at 332.]

The Court then described the requisite proof an injury is permanent and substantial:

> [W]e have concluded that there must be a "physical manifestation of [a] claim that [an] injury . . . is permanent and substantial." <u>Ponte</u>, <u>supra</u>, 171 <u>N.J.</u> at 54. An injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain, will not suffice because "[a] plaintiff may not recover under the Tort Claims Act for mere 'subjective feelings of discomfort.'" <u>Gilhooley</u>, <u>supra</u>, 164 <u>N.J.</u> at 540 (quoting <u>Brooks</u>, <u>supra</u>, 150 <u>N.J.</u> at 403 (citation omitted)).
>
> [<u>Ibid.</u>]

Finally, the Court noted "neither an absence of pain nor a plaintiff's ability to resume some of his or her normal activities is dispositive of whether he or she is entitled to pain and suffering damages under the TCA." <u>Ibid.</u>

Applying these principles here, it is at once evident that plaintiff's injuries are not of a character that are inherently "objectively permanent and implicate the substantial loss of a bodily function." <u>See</u> <u>id.</u> at 332. In addition, she did not suffer an injury that "permanently . . . render[ed] a bodily organ or limb substantially useless but for the ability of 'modern medicine [to] supply replacement parts to mimic the natural function.'" <u>See</u> <u>ibid.</u>

Plaintiff did, however, present evidence from two MRIs that revealed cervical disc herniation at C4-C5 and lumbar disc herniation at L5-S1. Following a physical examination after her

L4-L5 microdiskectomy, Dr. Horwitz stated, "[t]he objective medical findings . . . have resulted in a permanent impairment of 25% of the right leg, a permanent impairment of 25% of the left leg and an orthopedic disability of 65% of partial total." Viewing the evidence in the light most favorable to plaintiff, we conclude she suffered a permanent injury. We therefore turn to a fact-sensitive analysis to determine the remaining issue, whether, her "injuries could constitute a 'permanent loss of a bodily function that is substantial' under the TCA." See Knowles, supra, 176 N.J. at 333.

Gilhooley, Kahrar and Knowles provide examples of cases in which the plaintiff's injuries satisfied the statutory threshold. In all three cases, the plaintiff presented objective medical evidence linking an injured body part to the plaintiff's inability to perform certain bodily functions without extensive medical intervention.

In Gilhooley, supra, 164 N.J. at 533, the plaintiff suffered a fractured nose and fractured right patella. The "knee fracture resulted in the disruption of the extensor mechanism leaving her with a complete loss of quadriceps power." Id. at 536. The loss of quadriceps power "prohibit[ed] stair climbing, chair ascent and descent as well as any form of efficient walking." Ibid. Plaintiff underwent open reduction surgery, which required the

restructuring of her patella with the use of pins and a tension band wire. Ibid. She was hospitalized for five days and wore a leg brace for more than two months. Id. at 537. Despite the successful reconstructive surgery, the Court concluded the plaintiff satisfied the TCA threshold because her fractured patella was an objective permanent injury that caused her "to lose forever the normal use of her knee that, thereafter, could not function without permanent pins and wires to re-establish its integrity." Id. at 542.

The plaintiff in Kahrar underwent invasive surgery to repair a "massive tear" of the rotator cuff. 171 N.J. at 15. Despite successful surgery that alleviated plaintiff's pain, the reattached tendon was shortened in length, resulting in plaintiff's loss of approximately forty percent of the normal range of motion in her left arm. Id. at 16. The Court found that this reduction in normal function was both permanent and substantial, significantly impairing the plaintiff's ability to use her arm to complete normal tasks. Ibid.

In Knowles, supra, 176 N.J. at 333, the Court found the threshold was met by "objective medical evidence of a permanent injury that is directly responsible for the substantial loss of several bodily functions: the lack of feeling in his left leg and the inability to stand, sit, or walk comfortably for a substantial

13

amount of time, engage in athletics, and complete household chores." Id. at 333.

In contrast, Brooks and Ponte provide examples of injuries that were not shown to constitute a permanent loss of a bodily function that is substantial under the TCA.

In Brooks, the Court found a plaintiff who experienced pain and had a permanent limitation of motion in her neck and back failed to sustain "a permanent loss of a bodily function" because she was able to function in her employment and as a homemaker. 150 N.J. at 406. Noting "a plaintiff may not recover under the Tort Claims Act for mere 'subjective feelings of discomfort,'" Brooks, supra, 150 N.J. at 403 (quoting Ayers v. Township of Jackson, 106 N.J. 557, 571 (1987)), the Court stated that, in the absence of an objective impairment, such as a fracture, "a claim for permanent injury consisting of 'impairment of plaintiff's health and ability to participate in activities' merely iterates a claim for pain and suffering." Ibid. (citation omitted).

In Ponte, supra, 171 N.J. at 54, the Court held the plaintiff "ha[d] not demonstrated any physical manifestation of his claim that the injury to his knee is permanent and substantial." The Court observed the absence of "any evidence that plaintiff's range of motion is limited, his gait impaired or his ability to ambulate restricted." Ibid. While the plaintiff had cited one or two

14

instances of his knee "giving way," he failed to demonstrate "there is any permanent instability in the knee." Ibid. The record also failed to show plaintiff's knee injury continued to restrict him "in performing his work responsibilities, household chores, yard work, or in his weightlifting or biking activities." Ibid.

We acknowledge that plaintiff's ability to resume some "normal" activities and the fact she only required over-the-counter medication for pain do not alone bar her recovery for pain and suffering. Knowles, supra, 176 N.J. at 332. Still, applying the principles articulated in these cases, we conclude the proof of plaintiff's injuries more closely resembles the evidence that fell short of establishing the statutory threshold in Brooks and Ponte than the evidence in Gilhooley, Kahrar and Knowles.

As the Court noted in Knowles, supra, 176 N.J. at 333, the plaintiffs in Brooks and Ponte "complained that their injuries left them unable to perform certain tasks without pain, but the injuries were not severe enough or verifiable enough to constitute a 'permanent loss of a bodily function.'" (Citation omitted). By all accounts, plaintiff enjoyed "a good surgical outcome" from her microdiskectomy and reported her leg pain was "largely resolved" just two weeks after surgery. When he released her from care, Dr. Nachwalter stated she had "reached maximum medical benefit." She returned to work and remained employed for two years following the

accident. Since shortly after her surgery, she has "ambulated without any assistive devices." Although she complains of debilitating pain, there are no medical restrictions on her; she has not sought any treatment since December 2012 and she relies upon over-the-counter medications for pain relief.

Although Dr. Friedlander found a "decreased range of motion in all directions in her neck," he did not identify the degree to which her range of motion was decreased or how that resulted in the substantial loss of any bodily function. Compare Kahrar, supra, 171 N.J. at 15. Dr. Friedlander stated plaintiff's functional abilities were unlikely to improve but his failure to identify what functional abilities were affected and to what degree precludes any assessment of "the nature or degree of the ongoing impairment." Ponte, supra, 171 N.J. at 53.

Although it is not necessary for a plaintiff to prove a total permanent loss of use of a bodily function, "a mere limitation on a bodily function" will not suffice. Brooks, supra, 150 N.J. at 406. Similarly, "[a]n injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain," is insufficient. Knowles, supra, 176 N.J. at 332. Even affording plaintiff all reasonable inferences from the evidence, her proof shows no more than continuing pain that has had some

limiting effect on her; it fails to demonstrate any reduction in normal function was both permanent and substantial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3290-15T3