**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2781-19

TOBY WELLINGTON,

    Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Defendant-Respondent,

and

OFFICER MARSHALL,

    Defendant.

_____

Submitted February 1, 2021 – Decided March 12, 2021

Before Judges Rothstadt and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0274-18.

Franzblau Dratch, PC, attorneys for appellant (Brian M. Dratch, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney

General, of counsel; Patricia Nigro, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Toby Wellington appeals from the trial court's April 13, 2018 order granting defendant the New Jersey Department of Corrections (DOC) motion to transfer venue, its May 25, 2018 order denying plaintiff's motion for reconsideration of that order, and from the March 11, 2020 order granting defendants' motion for summary judgment and dismissing plaintiff's complaint seeking damages for injuries he allegedly sustained in two incidents while a prisoner at one of the DOC's facilities. In granting summary judgment, the trial court determined that plaintiff had not vaulted the statutory threshold requirements under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, for bringing claims against the State to recover for pain and suffering. On appeal, plaintiff argues the trial court erred by changing venue and in granting defendants' motion for summary judgment after finding "that there were no material issues of fact with respect to plaintiff's injury."

We affirm the award of summary judgment substantially for the reasons expressed by the trial court. Because we conclude that summary judgment was properly granted, we do not address in detail the balance of plaintiff's arguments.

The facts when viewed in the light most favorable to plaintiff are summarized from the record as follows. On June 22, 2016, while incarcerated at Northern State Prison in Essex County, plaintiff injured his back in a slip-and-fall accident. Almost a year later, plaintiff sustained further injuries to his back that caused him to suffer nerve damage when a DOC vehicle in which plaintiff was a passenger that was being driven by defendant Officer Marshall collided with another vehicle at the prison.

Thereafter, plaintiff served the DOC with timely tort claims notices as required by the TCA. On January 8, 2018, plaintiff filed his complaint that laid venue in Essex County. Defendants filed a timely answer and simultaneously filed a motion to transfer venue from Essex County to Cumberland County because at that time, plaintiff was incarcerated at another DOC facility located in Cumberland County. However, on February 23, 2018, defendants withdrew their motion to transfer venue, replacing it with a second motion to transfer venue with an amended brief in support of the motion. The trial court issued an order "deleting" defendants' first motion to transfer venue. As to the second one, plaintiff did not file any opposition. On April 13, 2018, the trial court granted defendants' unopposed second motion and transferred the case to Cumberland County.

A-2781-19

On April 27, 2018, plaintiff filed a motion for reconsideration, arguing that he was "not sure how the motion was relisted, but it should not have been as venue [wa]s correct in Essex County." Plaintiff did not address defendants' second motion. On May 25, 2018, noting that plaintiff had "not met [the] burden for reconsideration," the trial court denied plaintiff's motion.

Turning to plaintiff's injuries, his complaint alleged that as a result of the first incident, he suffered a back injury and nerve damage radiating down both legs. Prior to his deposition, on May 10, 2018, plaintiff had surgery on his back. Specifically, he underwent hemilaminectomies with medial facetectomies, foraminotomies, and nerve root decompressions along his spine at the L4-5 and L5-S1 disc sites.

At his deposition, plaintiff was asked to describe how his injury impacted his daily routine. According to plaintiff, since July 2018, he had been living at a halfway house. On a typical day he would get up at around 7:30 a.m., do his daily stretching, go to the gym to do some light exercises, leave the gym to call his family, go to school at 11:30 a.m., eat lunch, study for about two hours, and then work as a welder for three hours before returning to his room to shower, talk on the phone, lay down and start his day again. Plaintiff explained that performing certain tasks such as bending too far was painful.

A-2781-19

Plaintiff stated that he suffered from back pain, including sharp shooting pain down his leg. He also claimed that he had difficulty sitting for long periods, and while his back pain was tolerable, he avoided moving in any manner that caused him to feel pain. However, plaintiff confirmed that despite his pain, there was not "anything that [he] used to be able to do before the[] accidents that [he could not] do now." According to plaintiff, he was "not handicapped." Plaintiff also confirmed that his doctor never told him to stop doing any type of task.

Plaintiff's expert, Dr. Joshua Landa, examined plaintiff on December 20, 2019, and observed that plaintiff had suffered damage to his lumbar spine including "disc bulges at L4/5 and L5/S1" and concluded that "within a reasonable degree of medical probability," these injuries "occurred as a direct result of the [first] accident that [plaintiff] sustained . . . and [were] aggravated by the [second] accident." He also observed that plaintiff had "pain in his back and left lower extremity"; "pain and difficulty with bending, lifting and twisting"; pain that "interfere[d] with his normal activities of daily living"; and "pain with prolonged sitting and standing."

According to the doctor, while plaintiff's surgery "relieved the pressure on his nerves, he unfortunately remain[ed] with ongoing back and left lower extremity pain[, which] is likely due to permanent nerve damage that could not

be undone with the decompression surgery." Dr. Landa concluded that plaintiff's injuries were permanent and unlikely to improve with medical or surgical treatment.

On October 10, 2019, defendants filed their motion for summary judgment, arguing that plaintiff, who had at that time not yet secured an expert's report, failed to establish that he vaulted the injury threshold under the TCA. Plaintiff did not file any opposition, and the trial court entered an order granting the motion on December 20, 2019.

On January 10, 2020, plaintiff filed a motion for reconsideration, explaining that the failure to file opposition was the result of his counsel's mistaken belief that the motion had been adjourned because a December 2019 order had extended discovery through January 15, 2020. He also explained that on the day defendants' motion for summary judgment had been granted, plaintiff was being examined by Dr. Landa to facilitate the doctor's preparation of his expert report, which was ultimately completed on January 5, 2020, and which plaintiff intended to file in opposition to defendants' motion.

On February 28, 2020, the trial court granted plaintiff's motion for reconsideration and considered plaintiff's expert report and the parties' oral arguments before granting defendants' motion. In an oral decision placed on the record that day, the trial court noted that the TCA "requires that no damages

shall be awarded against a public entity for pain and suffering resulting from any injury . . . [except] in cases of permanent loss of a bodily function where the [expenses for] medical treatment" exceed the minimum statutory threshold provided under N.J.S.A. 59:9-2(d). The court found that although plaintiff had established that he had sustained a permanent injury, he had failed to show that he suffered "a permanent loss of a bodily function" that was "substantial," even when the facts were considered in the light most favorable to him. As the court explained, under the controlling case law, plaintiff was required to demonstrate "not only a permanent loss of a bodily function, but . . . an objective permanent injury and a permanent loss of a bodily function that is substantial."

Discussing the factual materials submitted by the parties, the court noted that although Dr. Landa's report clearly established a permanent injury, in his deposition, plaintiff described his daily routine following his injuries and complained of "back stiffness," "shooting pain" in his left leg, and "numbness in his left leg," but also noted "there is nothing that he can't do now that he could do before the accident." Considering the facts in the light most favorable to plaintiff, the court found that plaintiff could not "meet the substantial portion of the statute, and therefore the defense [was] entitled to judgment as a matter of law."

On March 11, 2020, the judge issued an order granting plaintiff's motion to reconsider and defendants' motion for summary judgment. This appeal followed.

We review de novo a trial court's grant of summary judgment. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). Accordingly, we apply the same standard as the trial court and determine "whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Ibid. (quoting R. 4:46-2(c)). In doing so, we afford the nonmoving party "all legitimate inferences." Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (quoting R. 4:46-2(c)). "If there is no genuine issue of material fact," we must determine "whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

On appeal, plaintiff argues that the trial court incorrectly found that he failed to satisfy the two-pronged test that courts apply in determining whether a plaintiff has vaulted the injury threshold under the TCA. He contends that he has "submitted proof of objective medical evidence of an injury that resulted in

a lumbar decompression surgery" and which resulted in "permanent nerve damage to his lumbar spine, which causes him daily pain," "permanent numbness to his left leg[,] . . . daily back stiffness," sometimes results in "an inability to sleep[,] and requires daily stretching in order to . . . function." Plaintiff argues that the materials he submitted evidencing the above are sufficient to overcome the threshold showing, and therefore the trial court erred in granting summary judgment. We disagree.

N.J.S.A. 59:9-2(d), commonly referred to as the "verbal threshold" of the TCA, see Nieves v. Adolf, 241 N.J. 567, 580 (2020), provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.
>
> [N.J.S.A. 59:9-2(d).]

The verbal threshold is not a grant of immunity; it is a limitation on recoverable damages when the public employee or entity is not immune. See Gilhooley v. Cnty. of Union, 164 N.J. 533, 538 (2000) ("Even where liability is present, the [TCA] sets forth limitations on recovery. One is the limitation on the recovery of pain and suffering damages [in N.J.S.A. 59:9-2(d)]."). To vault the threshold, "[a] plaintiff must show '(1) an objective permanent injury, and

(2) a permanent loss of a bodily function that is substantial.'" Knowles v. Mantua Twp. Soccer Ass'n, 176 N.J. 324, 329 (2003) (quoting Gilhooley, 164 N.J. at 540-41). Whether a party has met this second prong requires "a fact-sensitive analysis." Id. at 331. A trial court must consider whether the facts and circumstances place a plaintiff's injuries on "that part of the 'continuum of cases' in which [our] Court has determined that an injury is substantial and permanent." Ibid. (quoting Gilhooley, 164 N.J. at 541).

A plaintiff must provide objective evidence of a substantial impairment in order to meet the N.J.S.A. 59:9-2(d) threshold. Gilhooley, 164 N.J. at 540. "[No]t every objective permanent injury results in substantial loss of a bodily function." Id. at 541. A substantial loss does not mean that a plaintiff must demonstrate a "total permanent loss of use." Brooks v. Odom, 150 N.J. 395, 406 (1997). But, "[a]n injury causing lingering pain, resulting in a lessened ability to perform certain tasks because of the pain, will not suffice because '[a] plaintiff may not recover under the [TCA] for mere subjective feelings of discomfort'"—it is a plaintiff's reduced ability that makes his injury "substantial," not the discomfort he suffers when performing certain tasks. Knowles, 176 N.J. at 332 (second alteration in original) (quoting Gilhooley, 164 N.J. at 540). However, "neither an absence of pain nor a plaintiff's ability to resume some of his or her

10

normal activities is dispositive of whether he or she is entitled to pain and suffering damages under the TCA." Ibid.

Cases that present sufficient evidence of a permanent and substantial loss of a bodily function include Gilhooley, 164 N.J. at 542 (finding a patella fracture was an objective permanent injury causing the plaintiff "to lose forever the normal use of her knee . . . without permanent pins and wires to re-establish its integrity") and Kahrar v. Borough of Wallington, 171 N.J. 3, 16 (2002) (finding reattachment of a torn rotator cuff tendon resulted in the shortened length of the tendon, impairing the plaintiff's ability to use her arm to complete normal tasks). Summarizing Kahrar and Gilhooley, the Court in Knowles noted that those plaintiffs "presented objective medical evidence linking an injured body part to the plaintiff's inability, without extensive medical intervention, to perform certain bodily functions." Knowles, 176 N.J. at 332-33.

At the other end of the "continuum" are cases in which an injured party was merely "unable to perform certain tasks without pain." Id. at 333. In Brooks, the Court found the plaintiff did not show substantial loss where she "experience[d] pain" as a result of soft tissue injuries in her neck and back but where she could still "function both in her employment and as a homemaker." Brooks, 150 N.J. at 399, 406. As the Knowles Court summarized, the Brooks

defendant prevailed "because the plaintiff's daily activities, although painful, were not substantially precluded by her injuries." Knowles, 176 N.J. at 333.

Similarly, in Ponte v. Overeem, 171 N.J. 46, 51-54 (2002), the Court found no substantial loss where the plaintiff's knee injury, which required surgery, temporarily hindered his ability to exercise and do housework, but where the record did not establish he was permanently "restricted" in performing daily activities. The Court observed the absence of "any evidence that plaintiff's range of motion is limited, his gait impaired or his ability to ambulate restricted." Id. at 54. The Court noted that plaintiff failed to demonstrate "any permanent instability" and that the record did not show plaintiff's knee injury continued to restrict him "in performing his work responsibilities, household chores, yard work, or in his weightlifting or biking activities." Ibid.

Applying these principles to the instant matter, plaintiff did not satisfy the threshold because he did not suffer a "substantial loss" of use of any bodily function. He testified that he was not handicapped and that he could perform all activities, albeit with some pain. While plaintiff's injury has undoubtedly caused him discomfort and made performing some activities more difficult, there is no genuine dispute that he is still able to carry out his daily activities. Accordingly, plaintiff has not suffered a "substantial loss" of use of a bodily function.

Based on the foregoing, because plaintiff did not present material facts demonstrating he has suffered the "loss of a bodily function that is substantial" resulting from his injuries, he failed to satisfy the threshold requirement for recovery against defendants under the TCA, and defendants were entitled to judgment as a matter of law.

Because we conclude that summary judgment was properly entered in defendants' favor, we need not address in detail plaintiff's contentions about the trial court's transfer of venue from Essex County to Cumberland County. We only note that we discern no abuse of the trial court's discretion to change venue where appropriate, especially in matters involving public entities. See R. 4:3-2; R. 4:3-3; Fine v. Rutgers, State Univ. of N.J., 163 N.J. 464, 472 (2000) ("The right of a litigant to choose his own forum is required to yield to the venue Rule's objective of minimizing inconveniences to public entity defendants.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2781-19